# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

KEVIN ALLEN BAINBRIDGE,

    Plaintiff,

v.             CIVIL ACTION NO. 2:16-cv-00226

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Kevin Allen Bainbridge's Complaint seeking review of the final decision of the Commissioner of Social Security ("Commissioner"). (ECF No. 2.) By standing order filed in this case on January 14, 2016, this action was referred to United States Magistrate Judge Omar J. Aboulhosn for submission of proposed findings and recommendations for disposition (the "PF&R"). (ECF No. 4.) On February 17, 2017, the Magistrate Judge entered his PF&R, which recommends that this Court deny Plaintiff's request for judgment on the pleadings, grant the Commissioner's request for judgment on the pleadings, affirm the Commissioner's decision, and dismiss this case. Plaintiff filed timely objections to the PF&R on March 6, 2017 (the "Objections").

For the reasons that follow, the Court **OVERRULES** the Objections, (ECF No. 22), **ADOPTS** the PF&R, (ECF No. 21), **DENIES** Plaintiff's request for judgment on the pleadings, (ECF No. 16), **GRANTS** the Commissioner's request for judgment on the pleadings, (ECF No. 19), **AFFIRMS** the decision of the Commissioner, and **DISMISSES** this action.

## I. PROCEDURAL BACKGROUND

The facts concerning this matter are fully set forth in the PF&R and need not be repeated here at length. In short, Plaintiff protectively filed an application for supplemental security income on September 7, 2012, alleging disability as of July 31, 2007,[1] (ECF No. 14-7 at 9), due to post-traumatic stress disorder, attention deficit hyperactivity disorder ("ADHD"), back pain, and bipolar disorder, (ECF No. 14-8 at 29). The application was denied initially on January 22, 2013, (ECF No. 14-5 at 7), and upon reconsideration on April 19, 2013, (*id.* at 17).

Administrative Law Judge John T. Molleur (the "ALJ") held a hearing on August 26, 2014. On September 11, 2014, the ALJ issued an unfavorable decision. (ECF No. 14-3.) The ALJ found at step one of the "sequential evaluation" process that Plaintiff "has not engaged in substantial gainful activity since September 7, 2012, the application date." (*Id.* at 12.) At step two, the ALJ found that Plaintiff has several severe impairments, specifically: sciatica, osteoarthritis of the right hand, cognitive disorder, generalized anxiety disorder/post-traumatic stress disorder, bipolar disorder, and alcohol dependence in remission. (*Id.* at 12.) At step three of the analysis, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 13.) The ALJ next found that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR 416.967(c), reduced by certain limitations. (*Id.* at 14–18.) Finally, the ALJ found at step four that while Plaintiff is

---

[1] The Magistrate Judge's PF&R accounts for the lapse of time between Plaintiff's alleged disability onset date and the filing of the application for benefits. (ECF No. 21 at 2 n. 2.) Despite Plaintiff's alleged onset date—apparently related to an application denied prior to the initiation of this action—the pending matter is restricted to Plaintiff's disability status from September 7, 2012.

incapable of performing past relevant work, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.* at 18.)

The Appeals Council denied review of the ALJ's decision on November 30, 2015. (ECF No. 14-2 at 2–5.) Thereafter, on January 12, 2016, Plaintiff filed the Complaint in this Court.

## II. STANDARD OF REVIEW

### A. Review of the PF&R

The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendations to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

### B. Review of the ALJ's Findings and Decision

Judicial review of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied. *See* 42 U.S.C. § 405(g) ("The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."). Substantial evidence requires more than a scintilla, but less than a preponderance, of the evidence. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "In reviewing for

substantial evidence, [the court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision. *Id.* (citing *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).

Plaintiff bears the burden of proving to the Commissioner that he is disabled within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(5); *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993). "The term 'disability' means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a five-step "sequential evaluation" process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520(a) & 416.920(a)(4). In *Hall v. Harris*, the Fourth Circuit provided the following description of the "sequential evaluation" analysis:

> Under the process the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work. By satisfying either step 3 or 4, the claimant establishes a prima facie case of disability. The burden then shifts to the Secretary and leads to the fifth and final inquiry in the sequence: whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job.

658 F.2d 260, 264–65 (4th Cir. 1981); *see also* 20 C.F.R. §§ 404.1520 & 416.920 (providing the "sequential evaluation" analysis). The claimant bears the burden of proof at steps one through

4

four, but the burden shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). If a decision regarding disability can be made at any step of the process, however, the inquiry ceases. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

### III. DISCUSSION

Plaintiff's Objections to the PF&R rehash the two arguments initially raised in the Complaint. First, Plaintiff asserts that the ALJ erred in discounting the opinion of Dr. Elizabeth McClellan, his treating psychiatrist. Second, Plaintiff faults the ALJ for concluding that Plaintiff's degenerative disc disease was not a severe impairment. The Magistrate Judge rejected Plaintiff's contentions on both fronts and Plaintiff seeks review.

*A.     Weight Assigned to Treating Psychiatrist's Opinion*

The testimony of a treating physician is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927. "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.'" *Craig*, 76 F.3d at 590; *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) ("[T]he ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." (citation omitted)).

In determining whether contrary evidence justifies disregard for the opinions held by a treating physician, the ALJ is obligated to consider "1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the

5

supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006) (citing *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir.2005)); *see also* 20 C.F.R. § 416.927(c). The ALJ's decision must contain "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Dr. McClellan began treating Plaintiff for mental health concerns in 2011. She diagnosed bipolar disorder, alcohol-related disorder, alcohol dependence early partial remission, and combined-type post-traumatic stress disorder and ADHD. (ECF No. 14-11 at 8.) An independent consultative examination conducted in October 2012 confirmed many of Dr. McClellan's diagnostic findings—the examiner diagnosed bipolar disorder, generalized anxiety disorder, provisional cognitive disorder, alcohol dependence in full remission, and personality disorder. (ECF No. 14-3 at 55–62.) To that extent, the ALJ noted the consensus between Dr. McClellan and the consultative examiner and relied on their opinions in finding that Plaintiff suffers from a number of severe mental impairments. (ECF No. 14-3 at 16.) The ALJ declined, however, to give controlling weight to Dr. McClellan's assessment of the impact of Plaintiff's psychological symptoms on his job performance. The weight afforded that assessment is at issue in Plaintiff's Objections.

In 2014, Dr. McClellan performed a functional capacity evaluation on Plaintiff's behalf. In rating his ability to adjust to a job along a graded scale, Dr. McClellan indicated that Plaintiff

6

has "extreme" limitations in his ability to relate with coworkers, interact with supervisors, and deal with work stresses.[2] Dr. McClellan supported the ranking with a brief handwritten notation that Plaintiff "has difficulty getting along w[ith] others, mood swings, violent episodes." (ECF No. 14-2 at 55.) The evaluation form then prompted Dr. McClellan to rank Plaintiff's ability to make personal social adjustments. Again, Dr. McClellan ranked Plaintiff as "extremely limited" in his ability to behave in an emotionally stable manner, relate predictably in social situations, and complete a normal workday or work week without interruption from psychologically based symptoms. (*Id.* at 56.) Dr. McClellan referenced Plaintiff's "extreme mood swings w[ith] violent outbursts" in explaining her selection. (*Id.*)

The ALJ gave Dr. McClellan's opinion "little weight" in assessing the severity of Plaintiff's impairments and determining RFC. He considered the controlling factors in doing so. *Hines*, 453 F.3d at 563. The ALJ accurately summarized Plaintiff's extended history of mental health treatment with Dr. McClellan but amply explained the reasons for discrediting her social functioning assessment. He wrote that Dr. McClellan's opinion "is inconsistent with her treatment notes that fail to show any significant deficits in functioning, behavior, or interacting with others[.]" (ECF No. 14-3 at 17.) Dr. McClellan "failed to point to any objective findings, incidents of uncontrollable behaviors or inappropriate social interactions, or mental status evaluations that support such severe deficits in functioning." (*Id.*) In reviewing Plaintiff's mental health records elsewhere in his decision, the ALJ observed that the records predating the application date "do not show any significant behavioral or functioning deficits despite situational stressors." (*Id.* at 16.) Moreover, despite frequent mental health evaluations between 2011 and

---

[2] To define the term "extreme" the form stated, "There is major limitation in this area. There is no useful ability to function in this area." (ECF No. 14-2 at 54.)

7

2014, Dr. McClellan's notes reveal only intermittent periods of irritability that generally improved with use of prescribed psychotropic medication. (*See* ECF No. 14-12 at 28, 36, 40.) As the ALJ noted, Dr. McClellan's notes are devoid of any observation or narrative to support the significant deficits she would later ascribe to Plaintiff. (ECF No. 14-3 at 17.)

Other evidence of record eroded confidence in the limitations assessed by Dr. McClellan. The ALJ noted that Plaintiff's consultative examination revealed only moderate impairments in social functioning and his activities of daily living—including use of public transportation and out-of-state travel to care for a relative—did not support extreme limitations in functioning. Coupled with the inadequacy of her own treatment notes on that score, this contradictory evidence made Dr. McClellan's opinion "unpersuasive." (*Id.*) Even so, the ALJ incorporated moderate social limitations in the RFC assessment. He found that Plaintiff is capable of performing work that "requires no interaction with the public" and "requires no work with close coordination with others in a team type approach." (*Id.* at 14.)

It is apparent from the record that the ALJ did not err in declining to give controlling weight to Dr. McClellan's opinion. Dr. McClellan's assessment of Plaintiff's functioning is inconsistent with other mental health evidence of record and appears to go beyond her own clinical observations without clear basis. In such circumstances, the ALJ maintained the discretion to assign little weight to that opinion. *Mastro*, 270 F.3d at 178. The Court **FINDS** that substantial evidence supports the ALJ's decision to discredit the results of Dr. McClellan's social functioning assessment.

### B. *Severity of Plaintiff's Lumbar Spine Impairment*

At step two of the "sequential evaluation" process, the administrative law judge determines "the medical severity" of a claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). Severe impairments are impairments which, singly or in combination, "significantly limit[ ] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 404.920(c). "Basic work activities" include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 404.1521(b). "An impairment can be considered 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Evans v. Heckler*, 734 F.2d 1012, 1015 (4th Cir. 1984) (emphasis omitted).

In this case, the ALJ found that Plaintiff's mild degenerative disc disease was not "independently severe," nor did it "cause persistent functional limitations affecting [Plaintiff's] ability to perform basic work activities." (ECF No. 14-3 at 12.) Stated differently, the ALJ did not find evidence in the record to support a loss of function relating to Plaintiff's back problems. The ALJ buttressed this finding with the observation that despite claiming years of back pain, Plaintiff had never participated in physical therapy, used a pain clinic, seen a neurosurgeon, or required the use of an assistive device to ambulate. (ECF No. 14-3 at 15.) Consultative examinations performed in 2012 and 2013 revealed no functional limitations related to back pain

either—though Plaintiff experienced some tenderness of the spine, he had only mildly reduced range of motion. (*Id.*) The findings noted an inability to squat in 2012 but no difficulty in squatting in 2013. (*Id.*) Reviewing the ALJ's decision and the evidence of record, the Magistrate Judge found the ALJ did not err in concluding that Plaintiff's degenerative disc disease was not a severe impairment.

In the Objections, Plaintiff criticizes the ALJ for making only "cursory references" to the examination of Dr. Kip Beard when reviewing Plaintiff's back condition. Plaintiff alleges that the ALJ failed to assign weight to Dr. Beard's findings and reconcile these findings with Plaintiff's functional abilities. Dr. Beard performed a consultative examination of Plaintiff on January 8, 2013. His findings relating to Plaintiff's back pain did not differ in any meaningful way from those of the state agency medical consultants who concluded that Plaintiff did not have a severe lumbar spine impairment. (*See* ECF No. 14-10 at 65–70.) The ALJ noted the harmony between these various opinions in his decision. (ECF No. 14-3 at 16.)

Plaintiff also claims the ALJ erred in not discussing the results of a lower back x-ray completed at Dr. Beard's request. The ALJ is not required to discuss every piece of evidence in the record, *see Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005), and the Court cannot find that the ALJ's failure to discuss the results of this procedure undermines his decision as to the severity of Plaintiff's lower back impairment. The x-ray of Plaintiff's spine revealed "marked disc narrowing with endplate sclerosis and mild anterior spurring" at L5-S1. The radiologist's sole diagnostic impression was "degenerative disc disease." (ECF No. 14-10 at 71.) A diagnosis does not equal a disability, nor does it suffice to prove an impairment's severity under the regulations. "There must be a showing of related functional loss." *Gross v. Heckler*, 785 F.2d

1163, 1165 (4th Cir. 1986) (citation omitted). The lack of evidence linking Plaintiff's back condition to limited functional ability led the ALJ to conclude that Plaintiff's back impairment was not severe. The Court **FINDS** that substantial evidence supports that decision. Thus, in all respects, the Objections are **OVERRULED**.

## IV. CONCLUSION

For the foregoing reasons, the Court **OVERRULES** the Objections, (ECF No. 22), **ADOPTS** the PF&R, (ECF No. 21), **DENIES** Plaintiff's request for judgment on the pleadings, (ECF No. 16), **GRANTS** the Commissioner's request for judgment on the pleadings, (ECF No. 19), **AFFIRMS** the decision of the Commissioner, and **DISMISSES** this action.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: July 10, 2017

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE